UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MANNY PASTREICH, AS TRUSTEE, AND THE TRUSTEES OF THE BUILDING SERVICE 32BJ HEALTH FUND AND BUILDING SERVICE 32BJ SUPPLEMENTAL RETIREMENT SAVINGS PLAN,

Plaintiffs,

-against-

SECURITY ASSURANCE MGMT, INC.,

Defendant.

**OPINION AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

24 Civ. 6160 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

Plaintiffs Manny Pastreich, as Trustee, and the Trustees of the Building Service 32BJ Health Fund ("Health Fund"), and Building Service 32BJ Supplemental Retirement and Savings Plan ("SRSP") and Defendant Security Assurance Management Inc. cross move for summary judgment on whether Defendant owes additional contributions to Plaintiffs' funds, pursuant to audit findings. For the reasons discussed below, Plaintiffs' motion is granted in part and denied in part, and Defendant's motion is denied.

**BACKGROUND**

Plaintiffs are labor-management trust funds established and maintained pursuant to various collective bargaining agreements in accordance with Section 302(c)(5) of the Taft-Hartley Act (29 U.S.C. § 186(c)(5)). Plaintiffs' SOF at ¶ 2. Plaintiffs maintain employee benefit plans under Sections 3(2), 3(3) and 502(d)(1) of ERISA (29 U.S.C. §§ 1002(2), (3) and 1132(d)(1)), and multi-employer plans within the meaning of Sections 3(37) and 515 of ERISA (29 U.S.C. §§ 1002(37) and 1145). *Id.* Plaintiffs receive contributions from employers pursuant to the collective

bargaining agreements with Service Employees International Union, Local 32BJ (the "Union"), and invest and maintain the funds and distribute benefits to employees. Plaintiffs' SOF at ¶ 3.

Defendant is a contributing employer under a series of collective bargaining agreements and was a contributing employer during the time period at issue. Plaintiffs' SOF at ¶ 6. Defendant was obligated to make Health Fund contributions for all eligible employees at a flat rate per month. Under the collective bargaining agreements, full-time employees are automatically enrolled in the health insurance plan unless they opt out. Plaintiffs' Opposition at 6. In order to opt out, the agreements require that the employee show proof of other adequate and Affordable Care Act ("ACA") compliant health coverage. *Id.*

Full-time employees also receive a cash benefit payment for health and welfare, as a set dollar amount on each paycheck. Defendant's SOF ¶¶ 19-22. This health and welfare benefit also serves as the source of funds for the employee's healthcare, if enrolled. For employees enrolled in healthcare plans, the Defendant makes the contribution on that employee's behalf to the plan but deducts the cost of the contribution from the health and welfare benefit. *Id.* If an employee opts out of healthcare, they receive the full health and welfare benefit, without any deductions for healthcare plan enrollment. *Id.*

As an example of this language, the 2013 Washington D.C. Security Contractors Agreement collective bargaining agreement, which contains nearly identical language to the other agreements at issue, states:

> **32BJ Health Fund**
> Effective January 1, 2014, incumbent full-time employees (hired before June 1, 2013) shall have the option to decline Tri-State single Kaiser coverage through the Building Services 32BJ Health Fund for benefits and must decline such coverage as part of "open enrollment" process of the SEIU 32BJ Health Fund. Full-time employees who opt-out (by demonstrating adequate health care coverage elsewhere) and do not elect health insurance coverage, shall not be eligible for health insurance and the Employer shall not make any contributions to the SEIU 32BJ Health Fund on their

> behalf. Only employees who can demonstrate adequate coverage elsewhere shall be permitted to decline coverage. Full-time employees enrolled in the 32BJ Health fund will not be eligible for open enrollment. The Health Fund shall be responsible for administering any Employee opt-out along with obtaining all necessary information to confirm Employee coverage elsewhere. The Employer and Union shall make reasonable efforts to assist the Fund. Employers who initially decline coverage will be required annually during the open enrollment period to show adequate coverage to opt out of health coverage provided herein. Employees who fail to do so will be automatically enrolled in the plan.
>
> All full time employees hired on or after June 1, 2013 will be eligible for health insurance and the Employer shall make contributions on their behalf with no waiting period. These employees shall not be eligible for the open enrollment process.
>
> For employees receiving health coverage, the Employer shall make monthly payments to the fund: Effective June 1, 2013 $313 Effective July 1, 2014, $333 Effective July 1, 2015, $354.
>
> There shall be no waiting period for eligibility or employer payment.
>
> A. The employer shall establish and maintain a program pursuant to the requirements of Section 125 of the Internal Revenue Code, and any regulations issued thereunder, to allow employees to choose between receiving the amounts above as cash paid in the employee's wages or having the amounts paid to the Building Service 32BJ Health Fund as an employer contribution for health coverage.
>
> 2013 Washington D.C. Security Contractors Agreement
> (Carlos Martinez Declaration, Ex. B, ECF No. 36-2).

The agreements also provide that Defendant must make contributions to the SRSP. Plaintiffs' SOF at ¶ 9. Each agreement provides that Defendant must contribute a set amount "per hour paid" to employees. Plaintiffs' SOF at ¶ 11. Defendant must also make contributions for employees based on tax exempt wage deferrals, such as 401(k) contributions. Plaintiffs' SOF at ¶ 12.

Defendant provides reports of contributions to Plaintiffs through the Employer Self-Service System ("ESS"). Plaintiffs' SOF at ¶ 13. Plaintiff periodically audits the

contributions and reports in ESS with the accounting firm of Schultheis & Panettieri, LP ("Schultheis") performing the audit. Plaintiffs' SOF at ¶¶ 14-15.

Schultheis conducted an audit of the time period at issue: October 1, 2015, through June 30, 2021 (the "Audit"). Plaintiffs' SOF at ¶¶ 14-18. The Audit commenced on February 12, 2021. Plaintiffs' SOF at ¶¶ 17-18. Defendant cooperated in the Audit. Plaintiffs' SOF at ¶¶ 14-18. Schultheis found that Defendant under-contributed a total of $668,888.29. Plaintiffs' SOF at ¶ 46. The Audit concluded that Defendant under-contributed in three areas: (1) misreporting employees as part-time, when they should be full-time, and thereby underpaying health insurance coverage amounts by $437,885.89; (2) making SRSP contributions based on hours worked rather than hours paid, for a shortfall of $222,776.40, based on failing to capture overtime, vacation, holiday, and sick hours; and (3) failing to place $8,226.00 of employee 401(k) withholdings in the SRSP. Plaintiffs' SOF at ¶¶ 21-44.

The Audit's healthcare findings concluded that Defendant failed to make proper healthcare contributions under this scheme for 53 employees. Plaintiffs' SOF ¶ 21. These employees worked full-time hours but Defendant failed to timely classify them as full-time and therefore did not make healthcare contributions for these employees. Plaintiffs' SOF ¶¶ 21–23; Defendant's SOF ¶¶ 36–37. Defendant concedes that it improperly classified these employees and made no such payments. Defendant's Memo. at 10. Defendant contends that 17 of these employees opted out of health insurance coverage pursuant to the above scheme. Defendant's Opp. at 17.

Plaintiffs seek damages consistent with the findings in the Audit, interest at 9 percent per annum, liquidated damages at 20 percent, and attorney's fees and costs. Defendant seeks dismissal of some of Plaintiffs' claims on its cross motion for partial summary judgment.

## LEGAL STANDARD

Summary judgment may be granted only when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering cross motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Bronx Household of Faith v. Board of Educ.*, 492 F.3d 89, 96 (2d Cir. 2007).

## DISCUSSION

The parties ask me to decide: (1) whether Defendant must pay the healthcare contributions identified in the Audit; (2) whether Defendant must pay the other amounts identified in the Audit; (3) whether the statute of limitations has partially run; and (4) whether Defendant is liable for liquidated damages, attorney's fees, and costs. I consider each in turn.

### I. Defendant must pay health insurance contributions for the non-opted out employees.

The parties cross move for summary judgment on whether Defendant is liable for the health insurance contributions identified in the Audit. A trustee suing under Section 515 of ERISA to collect delinquent contributions must show that the employer was obligated to contribute under the terms of a plan or a collective bargaining agreement. 29 U.S.C. § 1145; *see Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94-95 (2d Cir. 2021). The parties agree that for the 53 employees at issue, Defendant failed to properly categorize them as full-time employees when they worked full-time hours. The question is whether Defendant was obligated under the agreements to make contributions for those miscategorized employees.

The agreements are unambiguous, and their meaning is a question of law. Each agreement provides that all full-time employees are eligible for coverage and that the Employer shall make contributions on their behalf. Enrollment in healthcare coverage is automatic unless the employee decides to opt out by demonstrating separate adequate, ACA-compliant coverage. Defendant argues that because it misclassified the employees it was not required to make contributions because those misclassified employees were not enrolled in the healthcare coverage. I disagree. The absence of enrollment for the employees was due to Defendant's own error. Further, because enrollment is automatic, unless the employee chooses to opt out, enrollment is not a condition precedent for contribution. Without the affirmative, documented choice to opt out of healthcare coverage, Defendant was obligated to make contributions. Therefore, Defendant cannot rely on non-enrollment to avoid its required contribution.

Defendant additionally argues that requiring it to contribute now would confer a windfall on the Health Fund, because the 53 employees received their full cash health-and-welfare benefit, and Plaintiffs incurred no costs because the employees were not enrolled in a healthcare plan. Generally, an employer's defenses to an under-contribution lawsuit are limited under ERISA Section 515. *DeVito v. Hempstead China Shop, Inc.*, 38 F.3d 651, 653 (2d Cir. 1994) ("Congress intended to limit the defenses available to an employer when sued by an employee benefit plan"). Thus, the Second Circuit has held that the "only two defenses recognized by the courts [are]: (1) that the pension contributions themselves are illegal, and (2) that the collective bargaining agreement is void (not merely voidable)." *Id.* Defendant's windfall argument does not put forth either of these defenses.

Further, other courts of appeals have held that an employer's payment of equivalent benefits directly to employees does not excuse its obligation to contribute to the fund. *Audit Servs., Inc. v. Rolfson*, 641 F.2d 757, 761 (9th Cir. 1981) ("The payment of cash to nonunion employees, however well-intentioned such payment may have been, does not excuse the obligation to make

contributions to the funds"); *Brogan v. Swanson Painting Co.*, 682 F.2d 807, 809 (9th Cir. 1982). A multi-employer fund is injured whenever a signatory employer fails to contribute, because the missing contributions and corresponding investment income would have been available to pay benefits for all covered employees. *Nesse v. Green Nature-Cycle, LLC*, 7 F.4th 769, 778-79 (8th Cir. 2021); *Flynn v. R.C. Tile*, 353 F.3d 953, 961 (D.C. Cir. 2004); *Cent. Pa. Teamsters Pension Fund v. McCormick Dray Line, Inc.*, 85 F.3d 1098, 1109 (3d Cir. 1996). Therefore, that Plaintiffs need not pay for healthcare services for the employees at issue does not prevent their suit. The cases Defendant cites, including *Trustees of Int'l Bhd. of Teamsters Local 727 Pension Fund v. O'Donnell-Bartz-Schultz Funeral Home*, 1995 WL 584056 (N.D. Ill. Oct. 3, 1995), addressed genuine double payments to a fund under ambiguous contracts, which is not the case here.

Finally, Defendant argues that the contribution would violate Section 302(a) of the Labor-Management Relations Act. Section 302 forbids employer payments to a union-affiliated fund except as permitted by Section 302(c), which allows payments held in trust for the sole and exclusive benefit of employees where the detailed basis for the payments is set out in a written agreement. 29 U.S.C. § 186(a), (c)(5). Those conditions are satisfied here. The contributions are specified in the written collective bargaining agreements, and they fund health benefits for Defendant's bargaining-unit employees. The authorities Defendant cites involved demands untethered to any written contribution promise, which Section 302 requires and is not at issue here. *See Trustees of Nat'l Automatic Sprinkler Indus. Pension Fund v. Fairfield Cty. Sprinkler Co.*, 243 F.3d 112 (2d Cir. 2001). Collecting contributions that a written collective bargaining agreement requires is not the evil Section 302 was enacted to prevent. *See Bldg. Serv. 32BJ Health Fund v. Renaissance Equity Holdings, LLC*, 2009 WL 5253548, at *2 (S.D.N.Y. Dec. 30, 2009) ("The purpose of Section 302 is to prevent fraud").

Therefore, Defendant's motion for summary judgment dismissing the Health Fund claims is denied, and Plaintiffs are entitled to partial summary judgment that Defendant is liable

to contribute to the Health Fund for those full-time employees, among the 53, who did not properly opt out of coverage.

However, Plaintiffs' motion cannot be granted in full because the amount of that liability is subject to a dispute of material fact. Defendant contends that 17 of the 53 employees properly opted out of the health insurance coverage. Defendant did not report these opted-out employees to Plaintiffs, and thus they did not appear in the Audit findings. It is disputed whether Defendant would owe contribution for those employees. Plaintiffs argue that those employees could not have properly opted out. However, this dispute concerns questions of fact as to whether an opt out occurred. Therefore, Plaintiff has not met its burden of proving that there is no issue of material fact as to the amount of damages, and the exact amount of liability owed by Defendant is an issue of material fact inappropriate for summary judgment. Plaintiffs' motion is accordingly granted as to liability and denied as to the amount owed to the Health Fund.

## II. Plaintiffs' motion for summary judgment is granted as to the other Audit contributions.

The remaining Audit findings fall into two categories: $222,776.40 in unpaid SRSP contributions and $8,226.00 in withheld but undeposited 401(k) wages. Plaintiffs are entitled to summary judgment on both, and Defendant's partial motion as to the SRSP is denied.

The collective bargaining agreements require SRSP contributions "per hour paid." Defendant concedes that it erred by contributing only for hours worked and by excluding holiday, vacation, and sick hours, which are plainly hours paid. The parties disagree as to whether the requirement for "per hour paid" includes overtime, as Defendant contends it does not. Here, the agreement's language is unambiguous. The term "per hour paid" includes overtime hours, as those are hours for which the employee is paid under the plainest definition of the term.

Defendant argues that the term should be defined by 29 C.F.R. § 4.175(a)(1), promulgated under the McNamara-O'Hara Service Contract Act, 41 U.S.C. § 6703. I disagree.

Defendant's asserted understanding that contributions were capped at 40 hours pursuant to this regulation is an unwritten side understanding that cannot be enforced. *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2d Cir. 1990); *N.Y. State Teamsters Conference Pension & Ret. Fund v. UPS*, 382 F.3d 272, 280 (2d Cir. 2004). The agreements unambiguously require contributions "per hour paid," and Defendant cannot point to extrinsic evidence that the regulation defines that term, in contradiction of the written language. Further, the regulation sets a floor for fringe benefits on federal service contracts but does not cap what parties may agree to provide. The Supreme Court rejected a similar argument under the Davis-Bacon Act, holding that the statute's purpose is not frustrated when contractual arrangements yield benefits above the statutory floor. *Walsh v. Schlecht*, 429 U.S. 401, 411 (1977).

As to the Audit's 401(k) findings, Defendant admits that it deducted wages from its employees earmarked for deposit into the SRSP, and that it never reported or remitted those withholdings to Plaintiffs. Those are the employees' own wages, not Defendant's money, and they are owed to the SRSP. The $8,226.00 in 401(k) findings is undisputed in amount and supported by Defendant's own payroll.

The amounts of the SRSP and 401(k) findings are undisputed and supported by Defendant's payroll records. Courts routinely rely on an auditor's findings and the underlying payroll to establish unpaid contributions. *See Grabois v. Action Acoustics*, 1995 WL 662127, at *5 n.3 (S.D.N.Y. Nov. 9, 1995). Therefore, the amounts, $222,776.40 for the SRSP and $8,226.00 for the 401(k) withholdings, are established as a matter of law. Plaintiffs' motion is granted as to these contributions, and Defendant's motion to limit SRSP contributions to 40 hours per week is denied.

### III. Defendant's motion for summary judgment on the statute of limitations is denied.

Defendant moves to bar all claims accruing before August 14, 2021, arguing that the statute of limitations has run on those claims. Defendant argues that the District of Columbia's three-year limitations period applies. In the alternative, Defendant argues that under New York's six-year statute of limitations, claims before August 14, 2018 are time-barred. Plaintiffs commenced this action on August 14, 2024, and the Audit, commenced on February 12, 2021, covered October 1, 2015 through June 30, 2021. For the following reasons, the motion is denied.

Claims under Section 515 of ERISA and Section 301 of the LMRA borrow the most closely analogous state limitations period. "ERISA does not provide a statute of limitations for civil enforcement actions, so the most similar state statute of limitations applies to most ERISA claims, and a court looks to federal common law to determine when the cause of action accrues." *Bilello v. JPMorgan Chase Ret. Plan*, 607 F. Supp. 2d 586, 592 (S.D.N.Y. 2009). Defendant contends that under New York's choice of law rules the District of Columbia's three-year statute of limitations should apply, rather than New York's six-year limitations.

Because New York is the forum state, I must apply New York's choice of law rules. *Kinsey v. New York Times Co.*, 991 F.3d 171, 176 (2d Cir. 2021). "Under these rules, the first step in any choice of law inquiry is to determine whether there is an 'actual conflict' between the laws invoked by the parties." *Booking v. General Star Mgmt. Co.*, 254 F.3d 414, 419 (2d Cir. 2001) (citing *Allstate Ins. Co. v. Stolarz*, 81 N.Y.2d 219, 223 (1993)). "An actual conflict arises where the law of each jurisdiction provides different substantive rules, and the differences are relevant and have a significant possible effect on the outcome of the trial, although they need not lead to different outcomes." *Hau Yin To v. HSBC Holdings, PLC*, 700 F. App'x 66, 68 (2d Cir. 2017). Here, there is a substantive conflict because New York applies a six-year statute of limitations while the District of Columbia applies a three-year statute. However, I decline to

decide which statute of limitations applies, because with the application of the discovery rule below, neither statute of limitations has been violated.

"Under federal common law, courts generally apply the 'discovery rule' to determine when an ERISA cause of action accrues, looking to when the plaintiff 'discovers, or with due diligence should have discovered, the injury that is the basis of the litigation.'" *Bilello*, 607 F. Supp. 2d at 592 (citing *Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007)). Defendant has failed to meet its burden to show that the claims should have been discovered earlier. A fund's delinquent-contribution claim accrues when the fund discovers, or with reasonable diligence should have discovered, the delinquency. *Bldg. Serv. 32BJ Health Fund v. Nutrition Mgmt. Servs. Co.*, 2017 WL 946331, at *2 (S.D.N.Y. Feb. 10, 2017) ("The Fund's cause of action accrued when the Fund "discover[ed], or with due diligence should have discovered, the injury that is the basis of the litigation.'") (quoting *Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007)).

The cases cited by Defendant do not produce a contrary rule, as *Blade Contracting* does not consider the discovery rule question and *Findlay Industries* pre-dates the Second Circuit's opinion in *Guilbert* applying the discovery rule. *Mason Tenders Dist. Council Welfare Fund v. Blade Contracting, Inc.*, No. 22-CV-9609 (JGLC), 2025 WL 936571, at *13 (S.D.N.Y. Mar. 27, 2025); *Textile Workers Pension Fund v. Findlay Indus., Inc.*, 1998 WL 788795, at *2 (S.D.N.Y. Nov. 10, 1998); *Guilbert*, 480 F.3d at 149 ("A federal court generally employs the discovery rule, under which a plaintiff's cause of action accrues when he discovers, or with due diligence should have discovered, the injury that is the basis of the litigation.") (quotations omitted).

Under the contribution system contemplated by the collective bargaining agreements, Defendant self-reports and manages its contributions subject to audit. Plaintiffs periodically conduct audits. However, prior to the conducting of an audit for a specific time-period, there is no evidence that Plaintiff would be on notice of any delinquencies in Defendant's payments. Therefore, Defendant has not met its burden to show that Plaintiffs should have known

of their claims earlier, and Defendant's motion for summary judgment on the statute of limitations is denied.

**IV. Plaintiffs' motion for liquidated damages, attorney's fees, and costs is denied without prejudice.**

Where a fiduciary obtains a judgment for unpaid contributions under ERISA Section 515, Section 502(g)(2) requires relief in the form of the unpaid contributions, interest on those contributions, an additional amount equal to the greater of further interest or liquidated damages of up to 20 percent as provided by the plan, and reasonable attorney's fees and costs. 29 U.S.C. § 1132(g)(2). Plaintiffs' Collections Policies set interest at 9 percent per annum and liquidated damages at 20 percent of the unpaid principal.

Each of these awards is calculated as a function of the principal amount of unpaid contributions. Because a genuine dispute precludes the Court from fixing the Health Fund principal at this stage, the total principal cannot yet be determined, and therefore liquidated damages and interest are also uncertain. Plaintiffs' request for interest, liquidated damages, attorney's fees, and costs is accordingly denied without prejudice. Upon the resolution of the Health Fund amount due, Plaintiffs may renew their application, and the Court will award interest, liquidated damages, fees, and costs as required by Section 502(g)(2).

**CONCLUSION**

Therefore, for the foregoing reasons, Plaintiffs' motion is granted in part. Defendant is obligated to pay pursuant to the Audit findings for the 401(k) and SRSP and for the Health Fund contributions for those employees who did not properly opt out, as to be determined as a matter of fact. Defendant's cross motion is denied in full. The parties shall appear for a telephonic status conference on August 14, 2026 at 11 a.m.

The Clerk of Court shall terminate ECF Nos. 28 and 35.

SO ORDERED.

Dated: July 9, 2026
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge